<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AGRI EXOTIC TRADING, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> UMAMI BURGER 57TH STREET, LLC, d/b/a KUMI RESTAURANT & BAR, AREPIII BR OPERATOR NYC, LLC, SBE ENTERTAINMENT GROUP d/b/a SBE LIFESTYLE HOSPITALITY, JAY PATEL, JOHN DOES 1-10, and RICHARD ROES 1-10, <br><br> *Defendants*. | Civil Action No. 23-799 <br><br> <u>**OPINION**</u> |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Plaintiff's unopposed motion for default judgment against Defendants Kumi Restaurant & Bar ("Kumi"); AREPIII BR Operator NYC, LLC ("AREPIII"); SBE Lifestyle Hospitality ("SBE"); and Jay Patel ("Patel") (collectively, "Defendants") under Federal Rule of Civil Procedure 55(b). D.E. 5. The Court reviewed all submissions made in support of the motion, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).[1] For the reasons that follow, Plaintiff's

---

[1] Plaintiff's brief in support of its motion for default judgment will be referred to as "Plf. Br." (D.E. 5-2), Plaintiff's certification in support of its motion will be referred to as "Cert." (D.E. 5-1); and Plaintiff's supplemental certification in support of its motion will be referred to as "Supp. Cert." (D.E. 6).

motion is **GRANTED in part** and **DENIED in part**.

I.      FACTUAL BACKGROUND[2]

Plaintiff is a New Jersey corporation and licensed dealer under the Perishable Agricultural Commodities Act ("PACA") engaged in the business of selling wholesale quantities of perishable agricultural commodities. Compl. ¶ 3. Kumi is a California LLC, operating as Kumi Restaurant & Bar in New York, New York. *Id.* ¶ 4. AREPIII is a Delaware LLC that is affiliated with Kumi. *Id.* ¶ 5. SBE is a California corporation that owns and controls Kumi and AREPIII. *Id.* ¶ 6. Patel is a resident of California and the Chief Business Officer of SBE. *Id.* ¶ 7.

On or around May 21, 2021, the Director of Procurement of SBE entered into a Credit Application Agreement (the "Agreement") with Plaintiff on behalf of Kumi in which Kumi agreed "to pay all invoices within the terms approved by Seller," and to pay all costs of collection and reasonable attorneys' fees in connection with the transactions under PACA. *Id.* ¶ 11 (citing Ex. A). Between approximately February 26, 2022 and October 15, 2022, Plaintiff sold and delivered $20,279.62 worth of produce to Kumi pursuant to the Agreement. *Id.* ¶ 12. Because Kumi received and accepted the produce, Plaintiff contends that it "became a beneficiary in a statutory trust under PACA (the 'PACA Trust')." *Id.* ¶ 13. Plaintiff also asserts that it preserved its interest in the PACA Trust by including the requisite statutory language in the invoices delivered to and signed by Kumi. *Id.* ¶¶ 14, 16. Plaintiff adds that these invoices provide that Kumi must "pay

---

[2] The facts of this matter are derived from the Complaint ("Compl."), D.E. 1; the certification confirming service of process ("Service Cert."), D.E. 3; and the certifications submitted in support of this motion, D.E. 5-1, D.E. 6. When citing to exhibits to the Complaint and the certifications, the Court first cites to the respective document ("Compl.," "Service Cert," "Cert.," or "Supp. Cert.") followed by the relevant exhibit ("Ex. __").

interest on unpaid balances at the rate of 18% per year or the maximum statutory rate, whichever is higher." *Id.* ¶ 15.

On November 28, 2022, AREPIII made a partial payment to Plaintiff on behalf of Kumi in the amount of $1,988.43. *Id.* ¶ 18 (citing Ex. 4). The partial payment was made by check and signed by Patel, the Chief Business Officer of SBE. *Id.* On January 4, 2023, Plaintiff sent Defendants a letter demanding payment on the remaining balance by January 13, 2023. *Id.* ¶ 21. Defendants did not pay nor reply. *Id.* ¶ 22. Accordingly, Plaintiff alleges that Defendants violated their "statutory, regulatory, and contractual obligations" to turn over Plaintiff's assets "by instead dissipating those assets." *Id.* ¶ 19. Plaintiff seeks to hold Defendants "personally, jointly, and severally liable" for the alleged violations. *Id.* ¶ 20.

**II.      PROCEDURAL HSITORY**

On February 10, 2023, Plaintiff filed a Complaint asserting seven counts,[3] with five against the Defendants named in the current motion.[4] The counts against the named Defendants include (1) failure to preserve and turnover PACA trust funds (Count One); (2) failure to promptly pay PACA trust funds (Count Two); (3) breach of contract for failure to pay for the accepted produce (Count Three); (4) unlawful dissipation of PACA trust assets (Count Five); and (5) prejudgment

---

[3] The Complaint does not include "Count Four." For the sake of consistency, the Court refers to each count as Plaintiff does in the Complaint.

[4] The other two counts are asserted against fictitious parties. Count Six is "Affiliated Entities – Does" and Count Seven asserts a cause of action for "Unlawful Dissipation of Trust assets by a Corporate Official" against "Roes."

3

interest and reasonable attorneys' fees and costs pursuant to PACA and the contract (Count Eight).[5] Defendants failed to answer, move, or otherwise respond to the Complaint. On April 5, 2023, the Clerk of the Court entered default against Defendants. The instant motion followed.

### III.    LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure permits a court to enter a default judgment against a properly served defendant who fails to respond. *Anchorage Assoc. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005)). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

Prior to entering a default judgment, the court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp.*

---

[5] Counts One, Two, and Eight are asserted against all Defendants; Count Three is asserted against Kumi; and Count Five is asserted against Patel.

*LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015) (citations omitted). The Court must also consider the appropriateness of the default judgment by weighing: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 Fed. App'x 519, 522 (3d Cir. 2006).

IV. ANALYSIS

A. Service of Process

"Before the Court can enter default judgment, it must find that process was properly served." *Teamsters Pension Fund of Philadelphia*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985). Moreover, "the party asserting the validity of service bears the burden of proof on that issue." *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted). Service may be made on an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Service may be made on a limited liability company following the same state law standards or by serving an authorized representative. Fed. R. Civ. P. 4(h)(1).

Plaintiff initially attempted to serve Defendants on February 14, 2023, by emailing Patel copies of the Complaint and civil cover sheet and asking him to accept service of process on behalf of Defendants. Service Cert. ¶ 2. Plaintiff did not receive a response to that email. *Id.* Plaintiff then attempted to serve Defendants via process server at SBE's principal place of business;

however, on March 2, 2023, Plaintiff was informed by the process server that a receptionist at the gate of SBE's principal place of business stated that "individuals cannot be served here," and that "[f]or the entities[,] service must be done through their agent for service: Paracorp[.] Inc[.], in Sacramento." *Id.* ¶ 3 (citing Ex. A). On that same day, Plaintiff claims to have spoken with the registered agent for SBE and AREPIII, who "agreed to accept service of process for [SBE and AREPIII] and Patel by regular mail," and the registered agent for Umami, who likewise agreed to accept service of process for Umami by regular mail. *Id.* ¶ 4 (citing Exs. B, C).

Plaintiff represents that it served Defendants by mailing copies of the summons and complaint to the registered agent for AREPIII, SBE, and Patel, and the registered agent for Umami, which were delivered on March 6, 2023, and March 7, 2023, respectively. Supp. Cert. ¶ 2 (citing Exs. A, B). Thus, it appears that Plaintiff attempted service under N.J. Ct. R. 4:4-4(b)(1)(C), which "prescrib[es] the modes of service by which personal jurisdiction may be obtained over a person not present in New Jersey, including by mailed service." *U.S. Bank Nat'l Ass'n v. Curcio*, 130 A.2d 1269, 1277 (N.J. Super. Ct. App. Div. 2016) (internal quotation marks and citations omitted). Rule 4:4-4(b)(1)(C) states as follows:

> If it appears by affidavit satisfying the requirements of R. 4:4-5(b) that despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule, then, consistent with due process of law, *in personam* jurisdiction may be obtained over any defendant [by] . . . mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to . . . a corporation, partnership, or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its registered office.

N.J. Ct. R. 4:4-4(b)(1)(C). Here, Plaintiff submitted a certification that explains that Plaintiff

6

"attempted to serve process on all Defendants personally" at SBE's principal place of business, and that Defendants apparently "refused personal service at that address and [] stated that service must be made on the [] Defendants' registered agents." Service Cert. ¶ 3. Accordingly, service by mail was permitted under the New Jersey rules.

Plaintiff represents that it mailed a copy of the summons and complaint, addressed to Defendants' respective registered agents for service, by FedEx Overnight Mail—*i.e.*, "certified mail."[6] Supp. Cert. ¶ 2 (citing Exs. A, B). It does not appear that Plaintiff also mailed a copy of the summons and complaint "simultaneously, by ordinary mail" to Defendants' registered agents as required by Rule 4:4-4(b)(1)(C). Nevertheless, the Court finds this error harmless because Defendants have actual notice of the matter, as evinced by their communications with Plaintiff regarding the matter.[7] *See Romeo v. Gold Star Distrib., LLC*, 257 A.3d 1192, 1208 (N.J. Super. App. Div. 2021) ("[I]mperfect service has been found sufficient where a defendant had actual

---

[6] *See* N.J.S.A. 1:1-2 (defining "certified mail" to "include private express carrier service, provided that the private express carrier service provides confirmation of mailing," which "shall include, at a minimum, confirmation of fact of mail, time of mailing, date and time of delivery, attempted delivery, signature, or other similar information for confirmation or proof associated with the delivery service."); *see also* Supp. Cert. Exs. A, B (providing tracking history and "proof-of-delivery" notifications for delivery to each agent, which contain the signature of the individual who accepted the delivery and confirm the date, time, and address of the delivery).

[7] Plaintiff asserts that on March 10, 2023, after delivery of the summons and complaint, Defendants' counsel emailed Plaintiff to resolve the matter. Service Cert., ¶ 5; Cert. ¶ 2. According to Plaintiff, this led to a series of email exchanges between the parties, and on April 4, 2023, Defendants proposed a settlement, which Plaintiff accepted on April 5, 2023, on the condition that Defendants execute the proposed agreement and make the first payment by April 10, 2023. Cert. ¶ 2. When Defendants failed to do so by April 13, 2023, Plaintiff represents that it informed Defendants that if they did not do so by the following day, Plaintiff would move for a default judgment. *Id.* According to Plaintiff, Defendants "have failed to respond to subsequent communications from [Plaintiff]." *Id.*

notice of the lawsuit prior to the entry of judgment."); *see also Citibank, N.A. v. Russo*, 759 A.2d 865, 868 (N.J. Super. Ct. App. Div. 2000) (quoting *Rosa v. Araujo*, 616 A.2d 1328 (N.J. Super. Ct. App. Div. 1992)) ("Where due process has been afforded a litigant, technical violations of the rule concerning service of process do not defeat the court's jurisdiction.").

## B. Jurisdiction

The Court has "an affirmative duty to look into its jurisdiction both over the subject matter and the parties" before entering a default judgment. *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (internal quotation marks and citations omitted). The Court has subject matter jurisdiction over this matter because it presents a federal question under PACA. *See* 28 U.S.C. § 1331; 7 U.S.C. § 499. The Court additionally has supplemental jurisdiction over Plaintiff's breach of contract claim pursuant to 28 U.S.C. § 1367(a).

Next, the Court considers whether it has personal jurisdiction over Defendants, which requires a two-step inquiry, first determining whether jurisdiction is permitted by the state's long arm statute, and next, whether personal jurisdiction violates due process. *IMO Indust., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).[8] In New Jersey, this is condensed to a one-step analysis focusing on due process requirements because the state's long-arm statute allows "exercise of personal jurisdiction to the fullest limits of due process." *Id.* Accordingly, the two steps are collapsed into one and "we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend

---

[8] The Court is engaging in a specific personal jurisdiction analysis because the other means of obtaining personal jurisdiction—such as general personal jurisdiction, consent, waiver, and in-state service on an individual—do not appear relevant.

traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted).

The Due Process Clause only allows a state to exercise jurisdiction over an out-of-state defendant where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1995) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). When a suit relates to the defendant's contacts with the forum, the court is deemed to have "specific jurisdiction." *See IMO Indus., Inc.*, 155 F.3d at 259. The Third Circuit uses a three-part test to determine whether specific jurisdiction exists for a defendant. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant needs to have "purposefully directed [its] activities at the forum." *Id.* (internal quotations omitted). Then, the suit must "arise out of or relate to at least one of those activities." *Id.* (internal quotations omitted). Finally, assuming the first two requirements are satisfied, the court must determine if the exercise of jurisdiction "comport[s] with fair play and substantial justice." *Id*. (internal questions omitted).

In determining whether personal jurisdiction can be established in connection with a contract-related claim, "[t]he fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). "The requisite contacts, however, may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Id.* (citing *Burger King Corporation*, 471 U.S. at 497; *cf. Custom Pak Brokerage, LLC v. Dandrea*

9

*Produce, Inc.*, No. 13-5592, 2014 WL 6885987, at *3 (D.N.J. Dec. 4, 2014) (considering such factors when determining whether the court had personal jurisdiction over the claims that plaintiff asserted under PACA).

Here, the facts alleged do not support a finding of personal jurisdiction over AREPIII or Patel. The Complaint alleges only one contact between these Defendants and this forum: that AREPIII made a partial payment to Plaintiff on behalf of Kumi, in the form of a check containing AREPIII's name in the top left-hand corner and Patel's signature. Compl. ¶ 18 (citing Ex. 4).[9] The Complaint does not allege that AREPIII or Patel were parties to the Agreement with Plaintiff, nor does it allege that they were involved in any communications regarding the formation of the agreement. *See Grand Entm't Grp. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (holding that the court had personal jurisdiction over a breach-of-contract case in which the defendants had not physically entered the forum but had sent at least twelve telexes into the forum and initiated twenty telephone calls with the plaintiffs in the forum regarding contract negotiations). Furthermore, the Complaint does not indicate that AREPIII or Patel initiated the business relationship with Plaintiff, or that they engaged in "extensive post-sale contacts" with Plaintiff in New Jersey.[10] Without more facts to support a finding that AREPIII or Patel

---

[9] The Complaint also alleges that "AREPIII, either independently or collectively with its affiliated companies, purchased and received Produce." *Id.* ¶ 5. But the invoices and statements of account submitted with the Complaint and certifications indicate that the produce was only billed to, and shipped to Kumi, with no indication that any of it was "purchased and received" by AREPIII. *See, e.g.*, Compl., Exs. 3, 4; Supp. Cert. Ex. D.

[10] *See Siegmeister v. Benford*, No. 15-07099, 2017 WL 2399573, at *4 (D.N.J. June 1, 2017) (citing *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 152-53 (3d Cir. 1996)) (finding no personal jurisdiction over the defendants where they had entered into agreements with

purposefully availed themselves of the privilege of doing business in this forum, the Court is unable to find personal jurisdiction over these Defendants.[11]

By contrast, the facts alleged do support a finding of personal jurisdiction over Kumi and SBE. On or around May 21, 2021, an officer of SBE signed an Agreement with Plaintiff on Kumi's behalf. Compl. ¶ 11 (citing Ex. 1). The Agreement made clear that SBE and Kumi were dealing with a New Jersey entity, as did the invoices that Kumi received with each produce delivery.[12] *See id.* Exs. 1, 2. The payments that became due under the invoices were to be sent to Plaintiff in New Jersey. And the partial payment made on Kumi's behalf was sent to Plaintiff's New Jersey address.[13] *See id.* Ex. 4. In this context, the partial payment (containing AREPIII's name in the top-left corner, and the SBE officer's signature), holds more significance because it manifests the intent reflected in the Agreement that SBE entered on Kumi's behalf. While the Complaint is not

---

the plaintiff and corresponded with the plaintiff in writing, over the phone, and over email, because notwithstanding such contacts, the defendants had not initiated the business relationship, sent payments to the plaintiff in the forum state, or engaged in "extensive post-sale contacts" with the plaintiff in the forum state).

[11] Plaintiff does not analyze personal jurisdiction in its moving papers. Thus, the Court's finding is without prejudice, and Plaintiff may present additional evidence and/or legal analysis if it believes that the Court does have personal jurisdiction.

[12] *See Mellon Bank,* 960 F.2d at 1223 (taking into account the defendants' awareness that they were dealing with a bank in the forum state, as demonstrated by the signed agreements, which indicated that the bank was an entity of the forum state, and the fact that payments on the notes were to be sent to the bank at an address in the forum state).

[13] *North Penn Gas v. Corning Natural Gas,* 897 F.2d 687, 690-91 (3d Cir.1990) (finding personal jurisdiction over the defendant in part because of the payments that it sent to the plaintiff in the forum state).

clear as to whether SBE and/or Kumi solicited the Agreement—a consideration that would further support a finding of personal jurisdiction[14]—the Court finds, based on the foregoing, that Kumi and SBE purposefully availed themselves of the privilege of doing business in New Jersey.[15]

### C. Sufficiency of Cause of Action

Under PACA, it is unlawful for buyers of produce to fail to make prompt payment for a shipment of produce. *Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 282 (3d Cir. 2006) (quoting *Idahoan Fresh v. Advantage Produce*, 157 F.3d 197, 199 (3d Cir. 1998)); 7 U.S.C. § 499b(4). "To ensure, payment, perishable agricultural commodities sold and the proceeds from the resale of those commodities are held in trust by the buyer for the benefit of the seller until full payment is made to the seller," and the purchaser has a "duty to insure that the PACA trust has sufficient assets to ensure prompt payment of the amounts owed to the seller." *Spring Valley Produce, Inc. v. Stea Bros.*, No. 15-193, 2015 WL 2365573, at *2 (E.D. Pa. May 18, 2015).

---

[14] *See Mellon Bank,* 960 F.2d at 1223 (considering, among other things, the fact that the defendants had options to seek financing with banks in any number of states, yet chose the plaintiff in the forum state); *see also Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 152 n.5 (3d Cir. 1996) (acknowledging that "reaching out is particularly difficult to find where the non-resident defendant is a buyer, rather than a seller, of the resident plaintiff's products," and noting that this "distinction is even more telling when the defendant is a passive buyer, *i.e.*[,] one which has been solicited as a customer of the plaintiff." (internal quotation marks and citations omitted)).

[15] The breach of contract claim against Kumi is premised on the same underlying factual allegations as the claims brought under PACA. Accordingly, the Court finds that it also has personal jurisdiction over Kumi as to Count Three. *See Blystra v. Fiber Tech Grp., Inc.*, No. 00-4593, 2005 WL 2807361, at *4 (D.N.J. Oct. 25, 2005) (stating that when "most of the claims arise out of the same set of facts and are tightly interwoven, an individualized discussion of each claim is unnecessary, as the jurisdictional analysis is the same.").

Purchasers in breach of these PACA provisions are liable for the "full amount of damages . . . sustained in consequence of such violation." *Agri Exotic Trading, Inc. v. D Mart Rutherford LLC*, No. 21-17794, 2022 WL 180278, at *3 (D.N.J. Jan. 20, 2022) (quoting 7 U.S.C. § 499e(a)).

To create a trust under PACA, "a produce seller must provide the buyer with notice of its intention to preserve the trust benefits." *Dimare Homestead, Inc. v. Klayman Produce Co.*, No. 12-2577, 2012 WL 5354597, at *2 (E.D. Pa. Oct. 31, 2012). Notice is met where the following language is included in an invoice:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4).

Here, Plaintiff alleges that it is a licensed dealer under PACA and that between approximately February 26, 2022, and October 15, 2022, Plaintiff sold and delivered to Kumi $20,279.62 worth of produce. Compl. ¶¶ 3, 12. Plaintiff continues that as a result of Kumi's receipt and acceptance of the produce, Plaintiff became a beneficiary in a statutory trust under PACA, and that it preserved its interest in the PACA trust by delivering the produce and including the requisite statutory language in the invoices that Kumi signed. *Id.* ¶¶ 13-14, 16. Finally, Plaintiff indicates that Kumi "acknowledged its unconditional acceptance of the [] [p]roduce and the terms of the Invoices upon delivery" of the produce, yet "failed and refused to pay Plaintiff any portion of the $20,279.64 principal debt that remains." *Id.* ¶¶ 16-17. Thus, Plaintiff has sufficiently pled PACA claims against Kumi for failure to pay trust funds and to make full payment

13

promptly. *See Eagle Fruit Traders, LLC v. Ultra Fresh, LLC*, No. 18-14541, 2019 WL 5704503, at *10 (D.N.J. Nov. 5, 2019); *see also Agri Exotic Trading, Inc.*, 2022 WL 180278, at *4. As to SBE, however, Plaintiff fails to analyze why, based on the facts alleged, SBE is liable for the PACA claims.[16] As a result, the Court does not find that Plaintiff has sufficiently established SBE's liability.

Finally, the Court finds that Plaintiff has set forth a legally sufficient claim for breach of contract as to Kumi. To establish breach of contract under New Jersey law, Plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (internal citation omitted). Under New Jersey law, "[a] contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." N.J.S.A. § 12A:2-204(1). Plaintiff alleges sufficient facts to show that Plaintiff and Kumi entered into a valid and enforceable agreement. On or around May 21, 2021, Kumi entered into the Agreement with Plaintiff, under which Kumi agreed to "pay all invoices within the terms approved by Seller," and to "pay all costs . . . in connection with the transactions under PACA." Compl. ¶ 11. Thereafter, Plaintiff sold produce to Kumi, which Kumi accepted when it signed the invoices for the produce.

---

[16] In support of its position that SBE should be held liable under PACA, Plaintiff cites *Weis-Buy Services, Inc. v. Paglia* for the proposition that "[a]n *individual* who is in a position to control [PACA] trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty and is *personally liable* for that tortious act." Plf. Br. at 3 (citing *Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415 (3d Cir. 2005) (emphases added)). Plaintiff provides no analysis as to why this theory of liability—or any other theory of liability—applies to SBE.

*Id.* ¶¶ 12-13. Under the terms of the invoices, Kumi was required to pay "interest on unpaid balances at the rate of 18% per year of the maximum statutory rate, whichever is higher, plus all attorneys' fees, costs and expenses incurred in collecting such balances, as additional sums owing in connection with the sales under the PACA Trust." *Id.* ¶ 15. Plaintiff alleges that notwithstanding the terms set forth in the Agreement and the invoices, Kumi failed to timely pay Plaintiff the principal amount of $20,279.62. *Id.* ¶¶ 11, 16-17. Plaintiff continues that, as a result, Plaintiff "has suffered, and is continuing to suffer, damages," and that it is entitled to a judgment in the "amount of $20,279.62 plus interest at the rate of 18% per year, costs, attorneys' fees, and any other relief deemed just and owing." *Id.* ¶ 33; *id.* at 9.

### D. Proof of Damages

The Court finds that Plaintiff has submitted sufficient evidence to support its request for $20,279.62, the principal amount of damages resulting from the failure to pay for the delivered produce, as well as $3,033.15 in interest.[17] Supp. Cert. ¶¶ 5-6 (citing Exs. D, E). The Court also finds that Plaintiff has adequately established its attorneys' fees and costs, totaling $8,915.57 ($8,222.50 in attorneys' fees and $693.07 in costs).[18] Supp. Cert. ¶ 7 (citing Ex. F). Plaintiff

---

[17] The interest was calculated by multiplying the daily rate of interest (1.5% of the respective invoice amount) by the number of days between the date of the invoice and May 16, 2023, the date that the supplemental certification was filed. *See* Supp. Cert. Ex. E; *see also* Supp. Cert. Ex. D (statement of account reflecting each transaction date, invoice number, and balance due).

[18] The attorneys' fees were calculated based on the 21.3 hours of service that were performed by the firm: 20 hours incurred by one attorney at a rate of $400; 0.8 hours incurred by another attorney at a rate of $200 per hour; and 0.5 hours incurred by a paralegal at a rate of $125 per hour. *See* Supp. Cert. ¶ 7, Ex. F. The costs reflect the $402 filing fee, the $205.50 process server fee, $76.87 in FedEx fees, and $8.70 in postage. Supp. Cert. ¶ 7.

sufficiently documented these fees, which do not seem unreasonable or disproportionate. *See* Supp. Cert. Ex. F. As a result, the total judgment amount is $32,228.34.

### E. Default Judgment Factors

Before entering a default judgment, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense; (2) the prejudice suffered by the party seeking default; and (3) the culpability of the party subject to default. *Chamberlain*, 210 F.3d at 164. Here, all three factors weigh in favor of default judgment. First, because Defendants have not responded in this matter, Defendants "put forth no evidence of facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp.*, 2015 WL 273656, at *3. Additionally, there is nothing on the face of the Complaint indicating that a meritorious defense is available. Second, Plaintiff has been prejudiced by Defendants' failure to answer, and will continue to suffer prejudice without default judgment because Plaintiff has no other means to seek relief for the harm allegedly caused by Defendants. *See Teamsters Pension Fund of Philadelphia*, 2011 WL 4729023, at *4 (find that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("Plaintiff will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm allegedly caused by Defendant."). Finally, absent any evidence to the contrary, Defendants' failure to answer, without providing any reasonable explanation, permits the Court to draw an inference of culpability on its part. *Teamsters Pension Fund of Philadelphia*, 2011 WL 4729023, at *4. Here, given Defendants' notice, "[t]here is nothing before the Court to show that Defendants['] failure to file an answer was not willfully

negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, No. 8-2108, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted). As a result, the Court finds that default judgment is warranted.

### V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** with respect to Defendant Kumi. The motion is **DENIED without prejudice** with respect to Defendant SBE, Defendant AREPIII, and Defendant Patel.[19] Judgment shall be entered against Defendant Kumi for damages in the amount of $32,228.34. An appropriate Order accompanies this Opinion.

Date: May 24, 2023

                                                 _____
                                                 John Michael Vazquez, U.S.D.J.

---

[19] The Court found Plaintiff did not establish personal jurisdiction as to AREPIII and Patel and did not establish liability as to SBE. However, if Plaintiff attempts to cure these shortcomings, Plaintiff should also establish the liability of AREPIII and Patel.